**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

United States of America,

     Plaintiff,

          v.                          Case No.  1:22cr085-1

Jamal Binford,                    Judge Michael R. Barrett

     Defendant.

## OPINION & ORDER

This matter came on for consideration of Defendant Jamal Binford's Motion for New Trial (Doc. 203); the Government's Response in Opposition to Defendant's Motion for New Trial (Doc. 205); Defendant's Reply in Support of Motion for New Trial (Doc. 206) and Supplemental Memorandum to Defendant's Motion for New Trial (Doc. 207); and the Government's Supplemental Memorandum Opposing Defendant's Motion for New Trial (Doc. 208).  In addition, on March 30, 2026, the Court held oral argument on Defendant's Motion.  (Doc. 209).

### I.    BACKGROUND

On February 3, 2025, a jury convicted Defendant on five counts: (1) Narcotics Conspiracy in violation of 21 U.S.C. § 846; (2) Accessory After the Fact in violation of 18 U.S.C. § 3; (3) Murder in Connection with a Drug Trafficking Conspiracy Violating 21 U.S.C. § 841(b)(1)(A), in violation of 21 U. S.C. § 848(e)(1)(A); (4) Use of a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c); (5) Use of a Firearm to Commit Murder During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(G)(1).  (Doc. 161).

Defendant explains that at trial the Government presented evidence from his phones which looked like he was engaged an illegal narcotics operation, but these photos and videos were actually a part of a "sizzle reel" for a movie he was creating.  Defendant explains that the movie would be called "American Cartel" and was intended to be a social commentary based on a comparison of the pharmaceutical industry to the illegal drug trade.  Defendant admits that he sold marijuana and the marijuana shown in the Government's exhibits at trial was real,[1] but explains that the narcotics were fake.  (Doc. 179, PAGEID 1115).  Defendant explains that the sizzle reel would be used to shop the movie idea to directors and producers.  (Doc. 179, PAGEID 1114).  Defendant maintains that there was evidence that drug activity was being simulated for the sizzle reel, but this evidence was never presented at trial by his attorney.  Now proceeding with new counsel, Defendant filed his Motion for a New Trial on January 7, 2026.

## II.  ANALYSIS

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."[2]  Although the Rule does not define "interest of justice," it is "widely agreed that Rule 33's interest of justice standard allows the grant of a new trial where substantial

---

[1]Defendant testified at trial that he sold marijuana illegally but was planning to open a licensed marijuana growing business. (Doc. 179, PAGEID 1105) ("Not only did I just sell marijuana, but I was actively pursuing -- I wanted to get into growing it now that it's legal. That what's I wanted to do."); (Doc. 179, PAGEID 1115) ("[J]ust to be extremely clear, I'll take accountability for my actions. I sell weed. I'm into marijuana. I look forward to opening my own growing operation. That's what I want to do.").

[2]The Government maintains that Defendant's motion is untimely because it was filed outside the Rule's 14-day deadline.  However, a motion for new trial grounded on newly discovered evidence must be filed within three years of the finding of guilty.  Fed. Crim. P. 33(b)(1).

legal error has occurred." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010). This includes "reversible error or violation of the defendant's substantial rights." *Id*. at 374. "[L]ess clear is whether a district court may grant Rule 33 relief where the verdict is not against the substantial weight of the evidence, and where no reversible error or violation of the defendant's substantial rights has occurred, but where the district court nonetheless believes that 'the interest of justice' requires a new trial." *Id*.

Defendant sets forth four bases for a new trial: (1) Defendant received ineffective assistance of counsel; (2) the Court improperly denied trial counsel's motion to withdraw; (3) the Court improperly denied Defendant a continuance to retain an expert; and (4) there was prosecutorial misconduct.  In addition, in a supplemental filing, Defendant explains he and his new counsel have discovered an instance of potential evidence tampering. (Doc. 207-2).

### A.     Evidence tampering

At trial, the Government introduced Exhibit C20, which is a report of the forensic extraction of data from one of Defendant's iPhones (Item 60).  Defendant maintains that Government Exhibit C20 was altered to delete exculpatory information.  Defendant explains that in reviewing materials for the Motion for New Trial, counsel discovered note number 121, which is an iPhone note from Defendant's phone.  (Doc. 207-2).  Defendant concludes that the Government removed this version of the iPhone note from Exhibit C20.

The Government responds that when the forensic extraction of Item 60 is viewed in the Cellebrite software program, note number 121 appears.  However, when counsel used the Cellebrite software to generate a report of the iPhone notes found on Item 60, the PDF report generated by Cellebrite generates a report which omits note 121 (and also

3

note 221).  (Doc. 208, PAGEID 3525).  Current counsel for Defendant reported the same issue when attempting to generate a report from the forensic extraction.  (Doc. 208, PAGEID 3526).

This issue was discussed during the oral argument on Defendant's Motion for New Trial.  While the Cellebrite's omission of notes 121 and 221 when generating a report is troubling, it is undisputed that Defendant and his trial counsel had access to the full forensic extraction of Item 60.  Moreover, because Defendant believed certain videos were missing from the extraction, the Court delayed the start of trial and gave Defendant an opportunity to review all the evidence from the iPhones with counsel.  (Doc. 150, PAGEID 647, 665).  During this period of review, Defendant himself was given access to the actual phones to review the information contained on the phones.  (Doc. 150, PAGEID 661-665).[3]  Therefore, the Court concludes that there is insufficient support for any claim of evidence tampering; and any technical difficulties with printing the report from the forensic extraction of Item 60 did not prevent Defendant and his counsel from having access to the full extraction.

B.      **Ineffective assistance of counsel**

"It is well settled that in order to prevail on a motion for new trial based upon

---

[3]The Court explained:

I do have a concern that Jamal says he's not been able to see all of this material, so I'd like to accomplish that.  And then I'm thinking, just to be on the safe side –

Not to rush you guys, but I think we start a trial Wednesday to give an opportunity for them to review, do what we have talked about, and then pick a jury on Wednesday. Then that gives counsel and Jamal time to discuss what they've seen or not seen.

(Doc. 150, PAGEID 665).

4

ineffective assistance of counsel, the defendant must show that: (1) counsel's performance was deficient; and (2) it prejudiced the defense in a manner which deprived the defendant of a fair trial." *United States v. Garcia*, 19 F.3d 1123, 1126 (6th Cir. 1994) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). However, "[w]hen deciding ineffective-assistance claims, courts need not address both" the deficient performance and prejudice "components of the inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052).

An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. The Court must apply "a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Id.* at 689. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (internal quotation marks omitted).

To show prejudice, the defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding," but "the defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id*. at 693. Instead, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Defendant maintains that trial counsel was ineffective because he failed to present or discuss evidence which would corroborate his moviemaking endeavor.  Defendant identifies the following evidence: (1) notes in his iCloud account detailing the themes and plot of "American Cartel;" (2) a recording of his meeting with Hollywood executives who were interested in the movie; and (3) a recording of a rap song Defendant helped create for the sizzle reel for the movie.

As to the notes in his iCloud account, Defendant's current counsel has found four notes discussing or otherwise indicating Defendant's plan to produce a movie called "American Cartel."  While three of the notes were admitted into evidence at trial through Government Exhibit C20, Defendant argues that his trial attorney did not present or meaningfully discuss that evidence at trial. The fourth note is contained in Defendant's iCloud extraction report, but it was never introduced into evidence. Defendant argues that this note (the "movie scenes re-do" note) is the most important.  The note reads as follows:

> Body: Movie scenes redo. First side of the ( American cartel complete in head ) now it is time to start the corporate side of things. Get corporate position with pharmaceutical company to get real insight
>
> Create chart that shows thousands of kilos and pounds at a time this time, not in the drugs that are most associated with the American consumer in the street level. It'll be kilos of OxyCodon, volume and other pharmaceutical medication that we can use in the movie showing how America got hundreds of billions of kilos of their drug of choice and sold/ sell them legally It is a must that I use real life people who are familiar with drugs on the pharmaceutical end to get real life corporate snow on the bluff like material. This is why corporate position at a pharmaceutical or logistics company is important

This will be a small list of the corporate/legal drug dealers and how they purchase kilos of medication by the Ton that is a lot deadlier than street drugs of ( cocaine/ marijuana ) and use them to make billions of dollars on behalf of their pharmaceutical companies and even file taxes on these drugs ! Film will also depict how pharmaceutical companies influence drug related laws to eliminate minority dealers while simultaneously allowing the big ones to clown. Vaccinations will be shown to be created after viruses are made in a lab. The pharmaceutical companies make the viruses in labs to put out in public so that in turn the companies conspire with a politician to create thr bs virus / disease just so they can make vaccinations and charge the govt / people billions of dollars . Govt selling things to itself

Movie will show main character, starting as a street hustler making hundreds of thousand and eventually millions at the street level. Once main character escapes the streets, a lot of his guys he grew up with will continue to sell drugs . They all get caught and get sentenced to multiple life sentences by judge with no remorse. The main character, moves on gets a degree in business, gets a position as a top executive at a pharmaceutical company. He's in charge of budgeting and approving dollar amount for the legitimate drug purchasing. He attends a dinner with the big wigs of the pharmaceutical and government officials and realizes that they all conspire to legitimize the sell of legal drugs that tend to be a lot more deadly and addictive while joking about putting the " niggas and other minorities " in prison for the rest of their lives because they don't value their lives. This causes the main character to start not only recording conversations from top politicians and govt officials, but he begins the idea of taking His information to the nato/ United Nations to make a human rights complaint just to realize that they were in on it.

(Doc. 203-1, PAGEID 3436).

The Court notes that according to this "movie scenes re-do" note, "American Cartel" revolves around the pharmaceutical industry's proliferation of Oxycodone through various means. However, none of the trial exhibits reference or show Oxycodone, which

7

would be in keeping with this plot line.  Rather, the evidence submitted by the Government deals with Defendant's involvement in the marijuana trade – which he admits – along with cocaine and fentanyl trafficking. In addition, Defendant's reliance on the sizzle reel is misplaced.  As with his boxing promoter/trainer activity, two things can be true at the same time.  Defendant did manage boxers, but he also used this opportunity to recruit young men into his drug trafficking enterprise.  The sizzle reel and his real criminal activity could easily contemporaneously exist.  Therefore, even if the jury had known that Defendant was developing a movie called "American Cartel," Defendant has not shown a reasonable probability the jury would have concluded that Defendant was not involved in a narcotics conspiracy and the outcome of his trial would have been different.

As to the recording of Defendant's meeting with Hollywood executives (Defendant Exhibit 5), the Government points out that this recording contains metadata which shows that the meeting occurred on May 5, 2022.  This date is after Defendant was interviewed by agents and his phones were seized in late 2021.  Defendant testified that it was at this meeting that the Hollywood executives advised him to create a sizzle reel for "American Cartel."  (Doc. 181, PAGEID 1400).  Therefore, the metadata calls into question Defendant's timeline and would have discredited his testimony that he began filming the sizzle reel in 2020. (See Doc. 179, PAGEID 1188).  Even if the Court were to find that trial counsel was ineffective for not presenting this evidence at trial, Defendant did not suffer any prejudice as a result.  Defendant was able to testify about this meeting at trial.  (Doc. 179, PAGEID 1309).  Defendant has not shown a reasonable probability that the jury would have concluded based on the recording of the meeting that Defendant was not a part of a narcotics conspiracy.  The jury also considered the other evidence from Defendant's

8

phones: text messages with co-conspirators; photographs of fentanyl, cocaine, and marijuana and drug paraphernalia; videos related to the trafficking of these drugs; and drug ledgers in Defendant's iPhone notes.

As to the recording of the rap song Defendant helped create for the "American Cartel" sizzle reel (Defendant Exhibit 6), Defendant argues that trial counsel was ineffective for failing to explain that the song was an affirmative step Defendant took towards creating the movie.  Defendant argues that the song recording was exculpatory evidence and should have been presented at trial.

As Defendant is correct to point out: "An attorney's failure to present available exculpatory evidence is ordinarily deficient, unless some cogent tactical or other consideration justified it." *Caldwell v. Lewis*, 2011 WL 915764 at *6 (6th Cir. March 16, 2011) (quoting *Pavel v. Hollins*, 261 F.3d 210, 220 (2d Cir. 2001) (internal quotes omitted). However, the Court is not convinced that the song recording was exculpatory because it does not directly show that Defendant was not participating in a narcotics conspiracy.  *See United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004) (recognizing that "explicitly exculpatory" evidence is evidence that "tend[s] to negate directly the guilt of the defendant").  In addition, even if counsel's failure to introduce the recording of the song amounted to deficient performance, the Court fails to see how the trial's outcome would have been different had the jury known about the song recording.  The metadata for the recording shows a date of February 1, 2022, which was after Defendant was questioned by agents in December of 2021.  The jury could have viewed the song recording as a post hoc explanation for the other evidence of cocaine and fentanyl trafficking, or as explained above, even if the song recording corroborated Defendant's "sizzle reel" theory, it does

not eliminate the possibility that Defendant was also involved in trafficking cocaine and fentanyl.  In light of this evidence, Defendant has not shown prejudice.  *See Hodge v. Hurley*, 426 F.3d 368, 375 n. 17 (6th Cir. 2005) ("[T]he prejudice determination is necessarily affected by the quantity and quality of other evidence against the defendant.").  The Court concludes that Defendant has not established ineffective assistance of counsel based on trial counsel's failure to present or discuss the evidence identified by Defendant.

Defendant also claims ineffective assistance of counsel based on trial counsel's failure to prepare him to testify.  Defendant explains that trial counsel attempted to rest without him taking the stand, but he insisted upon testifying after his counsel failed to introduce key pieces of evidence.

The trial transcript shows that after the Government rested its case, trial counsel explained that on behalf of Defendant, he was "not going to put any evidence on, and I want to go on the record that my client does not wish to take the stand after conferring with me time and time again. So I want the record to reflect that he was given the opportunity to testify but he's chosen not to.  I'm saying that in open court and my client is present." (Doc. 195, PAGEID 3337).  The Court then advised Defendant of his absolute right not to testify.  (Doc. 195, PAGEID 3337).  Defendant confirmed on the record that he had conferred with counsel and decided that he was not going to testify.  (Doc. 195, PAGEID 3338).  However, later that same day, Defendant changed his mind.  (Doc. 195, PAGEID 3350).   At that time, the Court advised Defendant that "[b]y taking the stand, you're exposing yourself to cross-examination by the government. I just want to make sure that you know you have an absolute right not to testify, but it's your call at the end of the day." (Doc. 195, PAGEID 3350).  Defendant confirmed that he wished to testify.  (Doc.

195, PAGEID 3350) ("I'm absolutely positive that's what I want to do."). The next day, the Court once again advised Defendant that if he waived his right to not testify, then the Government would be able to ask him questions under cross-examination. (Doc. 179, PAGEID 1094). Defendant again confirmed that he wanted to testify. (Doc. 179, PAGEID 1095). The jury was brought in and Defendant's trial counsel requested to have the case reopened. (Doc. 179, PAGEID 1095) ("On behalf of Mr. Binford, notwithstanding the fact that I rested before the jury, I respectfully request the Court to allow me to reopen the case so that Mr. Binford can address the jury."). The Court granted the motion and Defendant began to testify. (Doc. 179, PAGEID 1096).

Defendant has not specified what further preparation would have resulted in a different outcome at trial.[4] Defendant was fully advised of his right to not testify. If Defendant did not feel adequately prepared to give testimony, he was informed that it was his absolute right to decide whether to testify and he did not have to proceed. *Accord United States v. Noel*, No. 7:18-CR-2-KKC-CJS, 2024 WL 5294361, at *11 (E.D. Ky. Feb. 29, 2024), report and recommendation adopted, No. CR 7:18-2-KKC, 2024 WL 5055832 (E.D. Ky. Dec. 10, 2024). Therefore, Defendant has not shown ineffective assistance of counsel based on trial counsel's preparation for him to testify at trial.

Finally, Defendant argues that his trial counsel argued against his interests.

---

[4]For instance, Defendant explains that trial counsel was unprepared because he did not show the jury the recording of Defendant's meeting with the Hollywood executives after Defendant himself told the jury that they would see the video. (Doc. 181, PAGEID 1399-1400) ("we'll play the video for the jury"); (Doc. 179, PAGEID 1309) ("you'll see the video"). However, as explained above, the metadata from the recording would have contradicted Defendant's timeline of events and discredited his own testimony that he began filming the sizzle reel in 2020. Defendant also states that he was unprepared to be cross-examined on statements from his affidavit; but the affidavit was introduced in the Government's case-in-chief (Government Exhibit 66) and contained Defendant's own statements, so questions about the statements should have come as no surprise to Defendant.

Defendant points to two comments made by his trial counsel: (1) trial counsel told the Court that the motion to dismiss had no merit and Defendant's request to review the evidence from his iPhones on the morning of trial was a "delay tactic;" and (2) trial counsel effectively told this Court that Defendant was guilty and the evidence against him was "overwhelming." Defendant maintains that this conduct must be evaluated under *United States v. Cronic*, 466 U.S. 648 (1984).

Defendant's reliance on *Cronic* is misplaced. In *Cronic*, the Supreme Court identified three circumstances "so likely to prejudice the accused" that a "presumption of prejudice" may be appropriate. 466 U.S. at 658-60. Those circumstances include (1) where a defendant "is denied counsel at a critical stage" of the proceeding; (2) where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing;" and (3) where counsel is made to represent a client where no lawyer could provide effective assistance. *Id*. at 659-60. None of these circumstances exist here. Defendant has not presented any evidence that his trial counsel was "physically absent throughout an entire phase of the litigation or that a state actor prevented [trial] counsel from adequately representing him." *Moss v. Miniard*, 62 F.4th 1002, 1012-13 (6th Cir. 2023). In addition, the record shows that before and during the thirteen-day trial, Defendant's trial counsel meaningfully prepared for and participated in the trial, and subjected the prosecution's case to meaningful adversarial testing. Trial counsel consulted with Defendant, objected to exhibits and cross-examined the Government's witnesses. While Defendant has identified two isolated comments made by trial counsel, the Sixth Circuit has explained that, under *Chronic*, "[u]ltimately, an 'attorney's failure must be complete' rather than failing to act 'at specific points[.]' " *Id*. at 1012-13. Therefore, the Court will

12

employ the traditional two-part test for ineffective assistance found in *Strickland*.

At the outset, the Court notes that trial counsel's comments were made outside the presence of the jury.  As to the substance of the comments themselves, the Court finds that the comments were "within the wide range of reasonable professional assistance." *See Strickland*, 466 U.S. at 689, 104 S.Ct. 2052.  As another district court has explained, counsel is not required to raise meritless arguments:

> The Sixth Circuit has made clear that "there can be no constitutional deficiency" in failing to raise meritless arguments. *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999); *see also Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) (stating that counsel "[is] not required to make meritless arguments to avoid a charge of ineffective assistance of counsel"); *see also Horn v. Lafler*, 10-680, 2014 WL 4983659, at *34 (W.D. Mich. Sept. 22, 2014) ("Substantial deference is given to counsel's decisions not to raise an argument.").

*United States v. Bartleson*, No. 5:17-CR-124, 2025 WL 4706383, at *10 (E.D. Ky. Aug. 29, 2025), *report and recommendation adopted*, 2026 WL 636676 (E.D. Ky. Mar. 2, 2026).  Given the timing and nature of the comments, trial counsel's performance did not fall below "an objective standard of reasonableness" in light of "prevailing professional norms."  *See Strickland*, 466 U.S. at 688, 104 S.Ct. 2052.  Moreover, Defendant has not explained how he was prejudiced by the comments.  *Accord Breedlove v. United States*, 816 F. Supp. 3d 800, 807 (M.D. Tenn. 2026) (even assuming that counsel rendered deficient performance during the plea-bargaining process when she told the court that the defendant was guilty, the defendant's ineffective assistance claim fails on the prejudice prong of the *Strickland* test).

For the foregoing reasons, Defendant is not granted a new trial based upon ineffective assistance of counsel.

13

C. **Motion to withdraw**

Defendant maintains that the Court improperly denied trial counsel's Motion to Withdraw. Defendant explains that the Court did not focus on trial counsel's knowledge of the evidence and preparation for trial.

The Sixth Circuit has explained that "where a district court is on notice of a criminal defendant's dissatisfaction with counsel, the court has an affirmative duty to inquire as to the source and nature of that dissatisfaction—regardless of whether the attorney is court-appointed or privately retained." *Rodriguez Benitez v. United States*, 521 F.3d 625, 634 (6th Cir.2008). To satisfy this duty, district courts "simply must allow a defendant the opportunity to explain the attorney-client conflict as he perceives it." *United States v. Marrero*, 651 F.3d 453, 465 (6th Cir. 2011) (citing *United States v. Vasquez*, 560 F.3d 461, 467 (6th Cir. 2009)). In deciding a motion to withdraw, the following factors are to be considered:

> (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice.

*United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001).

Here, Defendant raised his dissatisfaction with counsel on the eve of trial. (Doc. 150, PAGEID 644). The granting of Defendant's request would have necessitated a last-minute continuance. The Court inquired as to the nature of the conflict in open court and in *ex parte* discussions. Despite the request to withdraw, Defendant and his trial counsel were still communicating with one another.[5] The disagreement between trial counsel and

---

[5]For example, Defendant's trial attorney explained: "I've discussed at length the government's position on resolving this matter by plea negotiation probably for like the last week

14

Defendant was centered on Defendant's belief that there were certain videos missing from the evidence produced by the Government.  Defendant believed that trial counsel needed to subpoena phone records directly from Apple and the phone carriers, but trial counsel believed it was unnecessary.  There was an extensive discussion of the issue by both Defendant and trial counsel before the Court.  (Doc. 150, PAGEID 648-669).  A solution was reached whereby the start of trial was delayed, Defendant was given access to the phones and had an opportunity to review the information on the phones along with his attorney.  (Doc. 150, PAGEID 666).  Defendant did not raise any further objections to trial counsel's representation; and therefore, the Court perceived that the conflict between Defendant and his trial counsel had been cured.

For the foregoing reasons, Defendant is not granted a new trial based upon this Court's denial of his Motion to Withdraw.

**D.**     **Request for a continuance**

Defendant maintains that the Court improperly denied his request for a continuance to retain a private expert to review his phone.  Defendant explains that a continuance would have made it possible for a phone extraction expert to testify.

As explained above, on the eve of trial, Defendant raised concerns about evidence it believed the Government had withheld and wanted to fire his attorney because he did not subpoena phone records from Apple and the phone carriers. (Doc. 150, PAGEID 647-651).  The Government explained that it had produced and made available the forensic extractions of the phones.  (Doc. 150, PAGEID 652-53).  After an extensive discussion

---

or so, Judge. I've been communicating with him regarding plea negotiations in person at the Campbell County Jail. I have explained to him each and every offer that the government has made, including the offers articulated by the government this morning." (Doc. 150, PAGEID 646).

between the Court, Defendant and his trial counsel and the Government, Defendant and his attorney were given access to the physical phones for inspection. (Doc. 150, PAGEID 656-57). Defendant discovered that on one iPhone (Item 60), there was a note with a save date of February 18, 2023, which was five days after his phones were seized, and two days after it was placed into ATF's locked evidence vault. Defendant's trial counsel maintained that someone had deleted a video and note from Item 60. (Doc. 191, PAGEID 2640-43). Defendant moved to dismiss the Indictment. The Court denied the motion, but explained that the issue "was fertile ground for cross-examination when agents testify." (Doc. 191, PAGEID 2660). Defendant then requested a continuance to allow an expert to examine Item 60. The Court denied this request. (Doc. 191, PAGEID 2661).

When presented with a motion for a continuance:

[the Sixth Circuit] has granted district courts wide discretion when determining whether a district court's denial of a criminal defendant's request for a trial continuance constitutes an abuse of discretion. *United States v. Lewis*, 605 F.3d 395, 401 (6th Cir. 2010). A district court's denial of a continuance is typically considered an abuse of discretion only when it has made its ruling based on "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *Vasquez*, 560 F.3d at 466 (quoting *Morris v. Slappy*, 461 U.S. 1, 11–12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983)). Further, in order for the district court's ruling to warrant reversal, a defendant must show that the denial of the continuance caused him actual prejudice in the defense of his case. To show actual prejudice, the defendant must establish that the continuance "would have made relevant witnesses available or added something to the defense." *United States v. King*, 127 F.3d 483, 487 (6th Cir. 1997).

*United States v. Johnson*, 612 F. App'x 345, 353 (6th Cir. 2015). Defendant has not established that a continuance would have added something to the defense. Defendant was free on cross-examination to inquire about the discrepancy in the "save dates." He was also permitted to testify about the actual events which took place in the videos which he claimed had been deleted from his phone.

16

For the foregoing reasons, Defendant is not granted a new trial based upon this Court's denial of his request for a continuance.

### E.    Prosecutorial misconduct

Defendant argues prosecutorial misconduct based on (1) the failure to correct untrue or misleading testimony and (2) misleading statements made in rebuttal closing argument.

With regard to the failure to correct untrue or misleading testimony, this Court has explained that the prosecution's reliance on false testimony could serve as grounds for a new trial under Rule 33:

> "The knowing use of perjured testimony, including the failure to correct false testimony, constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Foley v. Parker*, 488 F.3d 377, 391-92 (6th Cir. 2007) (citing *Napue v. Illinois*, 360 U.S. 264, 272, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959)). "In order to prevail on his claim that his conviction was obtained with the use of evidence that the prosecution knew or should have known was false, 'the moving party must show (1) the statements were actually false; (2) the statements were material, ...; and (3) [the] prosecution knew they were false.' " *United States v. O'Dell*, 805 F.2d 637, 641-42 (6th Cir. 1986) (quoting *United States v. Chagra*, 735 U.S. F.2d 870, 874 (5th Cir. 1984)).

*United States v. Thompson*, No. 2:21-CR-173(1), 2024 WL 4473930, at *4 (S.D. Ohio Oct. 11, 2024).  Here, Defendant has not shown that the statements he has identified are actually false.

First, Defendant points to the testimony of Agent Ruchti who stated that there was no evidence that Defendant made "American Cartel."  The Court notes that while Defendant testified that he had plans to make a movie called "American Cartel," there was no evidence that the movie was ever made.

Next, Defendant argues Agent Ruchti falsely testified there was no evidence that

Defendant owned a marijuana-related business entity.  However, the question Agent Ruchti was asked was whether he found evidence that Defendant "obtained a license to run or sell growing operations of marijuana."  (Doc. 189, PAGEID 2452).  Agent Ruchti replied:

> I have not. I have searched the phone for emails related to that, messages related to that from an entity that would issue that, as well as attempted to search the Oklahoma and Texas websites for businesses related to that with Jamal Binford.  We found nothing.

(Doc. 189, PAGEID 2452).

Finally, Defendant explains that Agent Ruchti testified that no search was conducted of the Lexington Avenue property, but Defendant has submitted a photo with his motion showing what he claims are federal agents on the sidewalk outside the Lexington address.  (Doc. 203-3, PAGEID 3466).  However, the Court notes that it was Ruchti's testimony that as a part of *his* investigation, a search warrant was never obtained for the property.  (Doc. 189, PAGEID 2464).

With regard to any misleading statements made in rebuttal closing argument, this Court has explained: "When considering whether conduct by the Government rises to the level of prosecutorial misconduct that requires a new trial, the Court first determines whether the conduct was improper."  *United States v. Flynn*, No. 2:19-CR-208, 2023 WL 2552741, at *2 (S.D. Ohio Mar. 17, 2023) (citing *United States v. Trujillo*, 376 F.3d 593, 613 (6th Cir. 2004)).  "Next, the Court considers whether the conduct was 'flagrant.'"  *Id*. The following factors are relevant in determining whether the conduct was flagrant: "1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of

18

the evidence against the accused." *Id*. (quoting *United States v. Francis*, 170 F.3d 546, 549–50 (6th Cir. 1999)).

Defendant points to remarks by the prosecutor in rebuttal closing argument that there was "no shred of any movie," and an invitation to the jury to "look through the evidence. It's not there." (Doc. 203, PAGEID 3430).  These statements do not amount to prosecutorial misconduct.   As the Sixth Circuit has explained, "[t]he prosecutor is ordinarily entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel." *United States v. Montgomery*, 358 F. App'x 622, 631 (6th Cir. 2009) (quoting *United States v. Wall*, 130 F.3d 739, 745 (6th Cir.1997)). Here, there was no evidence that the "American Cartel" movie was ever made and the prosecutor could fairly respond to the argument that any evidence showing fentanyl and cocaine distribution were actually for a movie Defendant was creating.

For the foregoing reasons, Defendant is not granted a new trial based upon prosecutorial misconduct.

### III.  CONCLUSION

Based on the foregoing, Defendant Jamal Binford's Motion for New Trial (Doc. 203) is **DENIED**.

**IT IS SO ORDERED.**

_/s/ Michael R. Barrett_
Michael R. Barrett
United States District Judge

19